UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOUGLAS MORRISSON,

                              Plaintiff,                    DECISION AND ORDER

-vs-                                                        1:18-CV-0531 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

## INTRODUCTION

Plaintiff Douglas Morrisson brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB"). Plaintiff claims to be disabled due to both mental and physical disorders. Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pla.'s Mot., May 22, 2019, ECF No. 9; Def.'s Mot., Sept. 19, 2019, ECF No. 17. For the reasons set forth below, Plaintiff's motion [ECF No. 9] is denied, the Commissioner's motion is granted [ECF No. 17], and the Clerk is directed to close the case.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the underlying facts and procedural history in this case. Plaintiff worked as an attorney in the Social Security Administration's Office of Disability Adjudication and Review from April 2001 until

March 2016.  Transcript ("Tr.") 30, Mar. 18, 2019, ECF No. 6.  In March 2016, Plaintiff had a dispute with his supervisor regarding Plaintiff's report that one of the Social Security Administration's contractors was committing fraud.  *See, e.g.,* Tr. 119–122, 848–850.  This dispute led to Plaintiff's mental decompensation, from which he alleges he has yet to recover.

On April 12, 2016, Plaintiff filed his DIB application alleging an onset date of March 31, 2016.  Tr. 300.  In his initial "Disability Report" filed with his DIB application, Plaintiff claimed that all of the following physical and mental conditions limited his ability to work: glaucoma (right eye), refraction error (left eye), bipolar disorder, general anxiety disorder, post-traumatic stress disorder ("PTSD"), ADHD, hernia, severed PCL (right knee), damaged MCL (right knee), and back pain.  Tr. 360.  The Commissioner denied Plaintiff's application on August 24, 2016.  Tr. 225.

Thereafter, Plaintiff requested a reconsideration and submitted additional evidence.  Tr. 232–233.  After further review, the Commissioner again denied Plaintiff's application on February 13, 2017.  *Id.*  On February 23, 2017, Plaintiff submitted an appeal and requested a hearing before an Administrative Law Judge.  Tr. 235.

Plaintiff's request was granted, and his hearing occurred in two sessions.  The first session of Plaintiff's hearing was held via video conference on July 11, 2017.  Tr. 114.  The Administrative Law Judge assigned (the "ALJ") presided over the hearing from Buffalo, New York.  Tr. 115.  Plaintiff appeared *pro se* and testified from

Jamestown, New York. *Id.* The second session of Plaintiff's hearing was held via video conference and telephone on November 7, 2017. Tr. 50. The ALJ again presided over the hearing from Buffalo, and Plaintiff again appeared *pro se* from Jamestown. *Id.* In addition, during the second session the ALJ called a medical expert and a vocational expert to testify by phone. *Id.*

In his decision on December 5, 2017, the ALJ found that Plaintiff was not disabled. Tr. 41. On March 30, 2018, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1–6. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

42 U.S.C. § 405(g) states that a finding by the Commissioner is "conclusive" if it is supported by substantial evidence. However, before deciding whether the Commissioner's determination is supported by substantial evidence, the Court must first determine "whether the Commissioner applied the correct legal standard." *Jackson v. Barnhart*, No. 06-CV-0213, 2008 WL 1848624, at *6 (W.D.N.Y. Apr. 23, 2008) (quoting *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Failure to apply the correct legal standards is grounds for reversal." *Id.* (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984)).

Provided the proper legal standards were applied, however, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

## DISCUSSION

The law defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a claimant of DIB is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v)). The claimant bears the burden of proving that he or she has a disability at steps one through four, and the burden shifts to the Commissioner at step five to show that there is work in the national economy that claimant can perform. *Id.*

4

When a mental impairment is alleged, the regulations require the ALJ to apply a "special technique" at the second and third steps of the five-step evaluation in order to determine whether the claimant in fact has a debilitating mental impairment. *Petrie v. Astrue*, 412 Fed. Appx. 401, 408 (2d Cir. 2011) (citing 20 C.F.R. §404.1520a). If the claimant does have such an impairment, the ALJ must rate the claimant's functional limitations in four broad functional areas.[1]  *Id.*

In his decision in the instant case, the ALJ followed this five-step sequential evaluation process and found that Plaintiff was not disabled.  At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2016, the alleged onset date.  *Id.*  At step two of the analysis, the ALJ determined that Plaintiff had the following severe impairments: post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, and borderline personality disorder.  Tr. 26–27.

The ALJ then applied the "special technique" for mental impairments and found that Plaintiff had no limitation in understanding, remembering or applying information; a marked limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a moderate limitation for adapting or managing himself.  Tr. 27–28.  Consequently, the ALJ determined that

---

[1] From June 13, 2011 to January 16, 2017, these four broad areas included: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  20 C.F.R. § 404.1520a(c)(3) (2011). As amended in 2017, the four broad areas of § 404.1520a(c)(3) (2017) include "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."

Plaintiff's mental impairments, either individually or together, did not meet or medically exceed the severity of one of the Commissioner's listed impairments. Tr. 27.

Before proceeding to step four, the ALJ considered the entire record and found that Plaintiff has the following residual functional capacity:

> to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. He can sit for six hours, stand for six hours and walk for six hours in an eight-hour workday. He can frequently climb ramps and stairs, and occasionally climb ladders, ropes, and scaffolds. He cannot repetitively stoop, kneel, or crouch and he can never crawl. He is limited to avoiding ordinary hazards in the workplace (i.e., boxes on the floor, doors ajar, etc.). He can never work at unprotected heights. He can operate a motor vehicle occasionally. The claimant can have no more than incidental (1/6 of shift) interaction with supervisors, co-workers and the public as necessary to perform assigned work, with visible or audible contact permitted at all other times, but with no interaction required. The claimant's time off task can be accommodated by normal breaks. He would be absent once per month at two-hour intervals each for pre-arranged behavioral health treatment appointments, including vicinity travel to and from the worksite.

Tr. 29. At step four, the ALJ found that Plaintiff is still capable of performing his past relevant work as a lawyer, which does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. Tr. 40. Hence, the ALJ concluded that Plaintiff is not disabled. *Id.*

In seeking to have the decision of the Commissioner reversed, Plaintiff claims that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence in the record and is based upon error of law. With respect to the evidence, Plaintiff contends "the evidence of record does not contain substantial

evidence to support a finding that Mr. Morrisson would not decompensate if he were to return to the workplace."   Pl. Mem. of Law, 15, May 22, 2019, ECF No. 9-1.

With respect to errors of law, Plaintiff argues the ALJ erred in his evaluation of the evidence by (1) failing to observe the "treating physician rule," (2) failing to discuss the 2001 report of Dr. Burton Grodnitzky and the opinions of the state agency psychological consultants, (3) providing the vocational expert with an incomplete hypothetical for her testimony, and (4) failing to discuss Plaintiff's "excellent work and wage history."   *Id.* at 18–28.   Plaintiff also argues that the Appeals Council erred as a matter of law by failing to consider the finding by the Office of Personnel Management (OPM) that Plaintiff was eligible for disability retirement from his senior attorney position with the Social Security Administration.   *Id.* at 27.

The Court has re-ordered the issues raised by Plaintiff's brief for ease of discussion in this decision and order.

The "Treating Physician Rule"

As to the "treating physician rule," Plaintiff argues that the ALJ erred when he did not give controlling weight to the opinions of his treating sources, all of which Plaintiff claims were "well-supported" and "not inconsistent" with the other evidence in the record.   Pl. Mem of Law at 18.   Plaintiff identifies five sources as "treating sources" for the purposes of the "treating physician rule": Dr. Victoria Curall, Dr. Stefanie Gwaltney-Hausch, Dr. Janet Wilson, Dr. Randolph Frank, and Dr. Burton Grodnitzky.   Pl. Mem of Law at 19–20.

For claims filed before March 27, 2017, the "treating physician rule" finds its basis in 20 C.F.R. § 404.1527.  § 404.1527(c)(1) provides that, generally speaking, a source who has examined the claimant is entitled to greater weight than one who has not.  Further, § 404.1527(c)(2) states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.[2]

"[I]t is well settled that the ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008).  Nevertheless, the Second Circuit has cautioned that "[a] treating physician's statement that the claimant is disabled cannot itself be determinative."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999).  Indeed, the regulations require that the treating source's medical opinion be controlling *only* if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ."  20 C.F.R. § 404.1527(c)(2).

Where the treating source's medical opinion does not meet these criteria, the

---

[2] For claims filed after March 27, 2017, the rules in § 404.1520c apply to the evaluation of opinion evidence.

ALJ is required to give "good reasons" for the weight assigned to the opinion. *Id.* The ALJ must determine the weight of the opinion by analyzing such factors as the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the opinion by relevant evidence, consistency with the record as a whole, the source's level of specialization, and other relevant factors. 20 C.F.R. § 404.1527(c)(2)–(6).

In his decision, the ALJ found that the "opinions rendered by the claimant's treating sources assume the claimant faced an atmosphere of hostility and antagonism [at work], which apparently followed a serious disagreement between the claimant and his supervisor." Tr. 38. The ALJ stated that "[t]here is no evidence to support a conclusion that the claimant would be unable to adjust to performing the work-related activities involved in the lawyer's job as he performed it, absent the hostile work environment." *Id.* Hence, the ALJ assigned minimal weight to the opinions of all of Plaintiff's treating sources as they related to the ALJ's determination of whether or not Plaintiff could perform any substantial gainful activity in other work environments. *Id.*

For the reasons stated below, the Court finds the ALJ's decision did not violate the treating physician rule.

*Victoria Currall, M.D.*

The ALJ assigned "some weight" to the opinion of Victoria Currall, M.D., because her opinion appeared to be based largely on the subjective reports of symptoms and limitations provided by Plaintiff, and the limitations she recorded on her functional capacity form seemed to have no clinical correlation with Plaintiff's symptoms.   Tr. 40.

Dr. Currall was Plaintiff's primary care physician "for many years."   Tr. 1083. The record includes notes from several of Plaintiff's visits to Dr. Currall.   Tr. 665–778.   With respect to his mental impairments, the record reflects that on April 1, 2016, Dr. Currall saw Plaintiff at her offices and thereafter issued a letter stating that "he is mentally decompensated and unable to continue to carry out his normal daily activities and work responsibilities."   Tr. 1084.   During the visit, Dr. Currall recorded that Plaintiff was "having trouble at work [after] he reported a contractor that was committing fraud [and] his management has immediately retaliated."   Tr. 672.   Dr. Currall further recorded that Plaintiff "feels 'Broken' – incapable of doing anything – completely decompensated."   *Id.*   Her assessment was that Plaintiff had "a [m]ajor depressv [sic] disorder," which was recurrent and severe without psychotic features.   Tr. 674.

With respect to Plaintiff's physical impairments, Dr. Currall treated Plaintiff for a variety of ailments from sinusitis to cellulitis to back pain and a hernia.   On May 3, 2016, Dr. Currall noted that Plaintiff had been lifting 15-pound boxes on a

step stool the previous night, and noticed that his back was sore the following day after lifting three bags of groceries. Tr. 668. On August 9, 2016, Dr. Currall examined Plaintiff in her office and palpated an inguinal hernia. Tr. 1109. On the physical residual functional capacity form she filled out on that date, Dr. Currall indicated that Plaintiff suffered from lumbago, depression, bipolar disorder, PTSD, anxiety, and an inguinal hernia. Tr. 1085. She also cited a series of postural limitations cited in the ALJ's decision, including that "patient reports he can lift 20 pounds for 1/3 of the day, and 10 pounds for 2/3 of the day." Tr. 37.

The Court finds no error in the ALJ's weighting of Dr. Currall's opinion because Dr. Currall is not a specialist in mental health treatment, and the physical restrictions the ALJ included in his residual functional capacity assessment largely reflect Dr. Currall's observations. Tr. 29. The postural limitations were included in the ALJ's residual functional capacity assessment, except the ALJ found Plaintiff could not repetitively stoop, kneel or crouch, rather than adopt Dr. Currall's opinion that he "never" could. Tr. 29. The ALJ's departure from Dr. Currall's assessment was not contrary to law because Dr. Currall's opinion was not clearly linked to her clinical assessment, and the state medical examiners "reviewed the evidence of record and opined that the medical evidence from claimant's treating sources did not support any severe (physical) impairment." Tr. 37.

*Dr. Stefanie Gwaltney-Hausch*

The ALJ gave "little weight" to the two submitted statements of Dr. Stefanie Gwaltney-Hausch, which were unaccompanied by any additional medical records. Tr. 1088, 1097.   On October 26, 2016, Dr. Gwaltney Hausch submitted a short letter indicating that she was currently treating Plaintiff on a weekly basis for psychological trauma, with associated diagnoses of PTSD, bipolar disorder, and ADD.   Tr. 1088. She opined that his symptoms result in an "inability to perform skilled or semi-skilled work on a sustained basis of 40 hours per week . . . [and] his inability to do so will last for a duration exceeding a year."   *Id.*

In a one page "treatment summary" dated January 25, 2017, Dr. Gwaltney-Hausch indicated she saw Plaintiff between September 2016 and December 2016, before treatment had to be suspended due to problems with Plaintiff's insurance.   Tr. 1097.   Based on her review of her treatment notes, which were not provided with the letter, Dr. Gwaltney-Hausch identified several "manifestations" of Plaintiff's PTSD and bipolar diagnoses, including: unkempt appearance evidencing impairment in daily self-care; loud, pressured speech; loosening associations and flight of ideas; and unpredictable shifts in topic of conversation.   *Id.*   She anticipated that full recovery would be possible, but that it would be at least one year before Plaintiff's symptoms would abate.   *Id.*

The Court finds that the ALJ's decision to award "little weight" to Dr. Gwaltney-Hausch's opinion was not contrary to law. While Dr. Gwaltney-Hausch had seen Plaintiff on a weekly basis over the course of a few months in 2016, as the ALJ noted, her assessment was at odds with the Mental Status Exams of Plaintiff's treating psychiatrist, Dr. Randolph Frank, which showed Plaintiff's attention, concentration and memory skills were intact. In addition, Dr. Gwaltney-Hausch did not submit any detailed treatment or diagnostic records that would have allowed the ALJ to assess her statements in greater depth.

*Dr. Janet Wilson*

The ALJ gave "little weight" to the opinion of Dr. Janet Wilson because, the ALJ stated, her "opinion is vague and does not indicate specific limitations." Tr. 38. In a letter dated, June 8, 2016, Dr. Wilson indicated that she saw Plaintiff for one evaluation session and 21 psychotherapy sessions between December 29, 2013 and June 3, 2014. Tr. 848. She stated that Plaintiff terminated treatment with her prematurely "following hospitalization for a suicide attempt following an upsetting domestic episode involving his wife." *Id.* Included in the record are Dr. Wilson's notes of several disturbing childhood incidents that Dr. Wilson believes contributed to Plaintiff's disorders. Tr. 1074.

Dr. Wilson also indicated that she saw Plaintiff on April 4, 2016, at which time he asked her to prepare a letter for his employer "supporting his need to be on 'Leave Without Pay' status as a result of harassment he was experiencing at work for

whistleblowing." *Id.* In that letter, Dr. Wilson indicated her opinion that "[f]urther exposure to the hostile dynamics of this work environment would be seriously detrimental to [Plaintiff]'s health and well-being." Tr. 850. She further stated that Plaintiff's bipolar disorder and PTSD "render him particularly vulnerable to stress and under the current circumstances, unable to perform in his current work setting." *Id.*

Lastly, in a letter dated July 25, 2016, Dr. Wilson stated that "even under the best of circumstances, successful recovery would require extensive, long-term psychotherapy." Tr. 1065. After providing a brief summary of her experience treating Plaintiff, Dr. Wilson concluded, "[u]nder any circumstances, [Plaintiff] is impaired by his mental health conditions and is not equipped to successfully handle the rigors of the workplace . . . ." *Id.*

The Court finds that the ALJ's assessment of Dr. Wilson's medical opinion as of "little weight" is not contrary to law given the context of her opinion. Although the childhood traumas suffered by Plaintiff listed in Dr. Wilson's treatment notes can be considered significant, it is notable that Dr. Wilson's primary treatment of Plaintiff was in the first six months of 2014, before which Plaintiff had successfully functioned in his work environment for approximately 13 years, and after which Plaintiff continued to successfully function for nearly two more years prior to the dispute with his supervisor that led to his decompensation. Furthermore, Dr. Wilson's initial letter in April 2016, contained important language limiting her opinion to "this work

environment, "the current circumstances," and "his current work setting." Tr. 850. While her later letter, in July 2016, was more generally applicable, Dr. Wilson did not have a treating relationship with Plaintiff at that time. Tr. 1065.

*Dr. Randolph Frank*

The ALJ did not dedicate a paragraph to expressly assessing the weight he gave to Dr. Randolph Frank's opinion, but the ALJ did identify Dr. Frank as Plaintiff's "treating psychiatrist." Tr. 39. Therefore, the Court analyzes the ALJ's consideration of Dr. Frank's opinion using the ALJ's general statement that Plaintiff's treating sources were given minimal weight because their opinions "assume the claimant faced an atmosphere of hostility and antagonism [at work], and present "no evidence to support a conclusion that the claimant would be unable to adjust to performing the work-related activities involved in the lawyer's job as he performed it, absent the hostile work environment." *Id.*

In a letter to the Social Security Administration dated July 26, 2016, Dr. Frank indicated that Plaintiff had been under his care since 2008 for the treatment of bipolar disorder, attention deficit disorder ("ADD"), and PTSD. Dr. Frank noted that Plaintiff "did well despite significant marital stressors and other life difficulties until March and July 2016, when he encountered significant workplace trauma." Tr. 14. After alluding to Plaintiff's July 2016 decompensation and hospitalization in a psychological facility, Dr. Frank stated, "with a high degree of medical certainty," that if Plaintiff were to return to "*that* workplace," he may again be traumatized. *Id.*

15

(emphasis added). Consequently, Dr. Frank opined that Plaintiff's "ability to perform his usual sustained gainful employment has been compromised." *Id.*

Also in the record are Dr. Frank's treatment notes from office visits that Plaintiff made on July 1, 2015; August 18, 2015; October 5, 2015; December 16, 2015; February 16, 2016; March 16, 2016; June 6, 2016; July 26, 2016; August 2, 2016; September 22, 2016; and November 3, 2016. Tr. 895–903; 1090–1091. For nearly all eleven of those office visits, the section of the treatment notes entitled "Mental Status Exam" reflect that in Dr. Frank's judgment, Plaintiff was well-groomed, cooperative, calm, euthymic, normal speech, intact thought process, intact memory, intact concentration, intact attention, intact judgment and insight and appropriate abstract thinking. The primary exception is July 26, 2016, following Plaintiff's failed attempt to return to work at the Social Security Administration, when Dr. Frank's "Mental Status Exam" reflected a "worrisome" affect and "anxious" mood. Tr. 902. Significantly, even at that traumatic time, Dr. Frank's notes show that Plaintiff's memory, concentration, attention and thinking all still appeared to be "intact." Tr. 902. While the handwritten notes on July 26, 2016, reflect stress due to Plaintiff's supervisor, notes from the other visits also include multiple observations to the effect that Plaintiff is doing well.

The Court finds that the ALJ's interpretation of Dr. Frank's medical opinion as exclusive to the work environment Plaintiff faced at his particular Social Security Administration office is not unreasonable or contrary to law given Plaintiff's ability

16

to work for eight years under Dr. Frank's care, as well as the other evidence in the record.

*Dr. Burton H. Grodnitzky*

The ALJ did not discuss Dr. Burton H. Grodnitzky at all in his decision. Plaintiff contends this also amounts to an error of law under the "treating physician rule."

Based on a report submitted by Plaintiff, it appears that Plaintiff's former treating psychiatrist, Demetrius Georgopolis, M.D., referred Plaintiff to Dr. Grodnitzky for a neuropsychological evaluation in October of 2001.  Tr. 15.  Dr. Grodnitzky's report indicates that the purpose of the evaluation "is to get a clearer picture of [Plaintiff's] neuropsychological functioning and to make treatment recommendations."  Tr. 16.  The report indicated that Plaintiff "functions overall in the High Average range [and] demonstrated an ability to think flexibly . . . ."  Tr. 19. Nevertheless, Plaintiff also demonstrated "rather severely impaired attention/concentration difficulties" and "[t]here were indications of some memory impairment . . . ."  *Id.*  Dr. Grodnitzky concluded that Plaintiff would likely "have difficulty handling a high demand type of position and is probably well-suited to continue in his current position."  Tr. 20.

Under the regulations, a "treating source" is defined as an "acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."  20 C.F.R. §

17

404.1527(a)(2). It does not appear from the record, nor does Plaintiff otherwise allege, that he had an ongoing treatment relationship with Dr. Grodnitzky. Though the evaluation appears to have occurred over three sessions, there is no indication that the relationship with Dr. Grodnitzky was anything other than a one-time neuropsychological evaluation conducted fifteen years prior to Plaintiff's decompensation. Tr. 16. Accordingly, the Court finds that Dr. Grodnitzky was not a treating source, and hence that the ALJ's failure to attribute weight to Dr. Grodnitzky's evaluation results from 2001 was not contrary to law.

Failure to Consider Medical Evidence

Plaintiff observes that the ALJ failed to discuss Dr. Grodnitzky's report and the "unanimous opinions of the State Agency Psychological Consultants" that Plaintiff needs accommodation with respect to workplace supervision. Plaintiff contends that this constitutes an error of law in violation of 20 C.F.R. § 404.1527(c), which requires the ALJ to "evaluate every medical opinion [he] receives." The Court disagrees.

Although § 404.1527 requires the Commissioner to consider every medical opinion that he receives, he is "not required to explicitly . . . reconcile every conflicting shred of medical testimony . . ." *Dean v. Comm'r of Soc. Sec.*, No. 18-CV-6323 HBS, 2019 WL 3450971, at *3 (W.D.N.Y. July 31, 2019) (citing, *inter alia*, *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). Indeed, the Second Circuit has consistently held that "failure to cite specific evidence does not indicate that such evidence was not

considered." *Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019).

After a careful review of the record and of the ALJ's decision, the Court finds that the ALJ did not err with respect to the opinions of the state agency psychological consultants. As noted above, the ALJ's residual functional capacity finding specifically limited Plaintiff to "no more than incidental contact" with his supervisors, and the ALJ expressly stated that he "placed limitations on [Plaintiff's] exposure to supervision . . . to minimize the demands of social interaction." Tr. 29, 40. Moreover, at multiple points throughout his decision, the ALJ discusses the opinions of the state psychologists and assesses their merit in relation to an ultimate determination of Plaintiff's status. *See, e.g.,* Tr. 34 (discussing the opinions of Dr. Leizer and Dr. Milan); Tr. 39 (discussing the opinions of Dr. Milan and Dr. Sampson). The ALJ did not err by failing to expressly reconcile his residual functional capacity finding with the opinions of each of the state psychological consultants. *Dean*, 2019 WL 3450971, at *3.

With respect to Dr. Grodnitzky's opinion, the Court notes that "[w]hen, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). As the medical expert stated in his testimony, Dr. Grodnitzky evaluated

Plaintiff and issued his report in 2001. Tr. 84. Plaintiff himself reports that in the fifteen years *after* Dr. Grodnitsky's report, Plaintiff "distinguished [him]self right away and had a highly successful career . . . [and] courageously pressed on with [his] work." Tr. 374. This is consistent with the ALJ's conclusion that "[t]here is no objective evidence to support an inference that, absent the hostile work environment . . . [Plaintiff] would have been unable to adjust to perform this work as he had done successfully for many years." Tr. 41. The Court therefore finds the ALJ's failure to mention Dr. Grodnitzky's report was not reversible error.

The Vocational Expert

Plaintiff argues that the ALJ erred as a matter of law by presenting the vocational expert at the administrative hearing with a hypothetical that was at odds with Plaintiff's actual work capacity. Pla. Mem. of Law at 25. Specifically, Plaintiff observes that the hypothetical presented to the vocational expert involved a claimant who was "able to deal with ordinary levels of supervision in the customary work setting." Tr. 96. Plaintiff contends that the ALJ's hypothetical was an overstatement of Plaintiff's actual capacity, and that this discrepancy led the vocational expert to the erroneous conclusion that Plaintiff was able to do his past relevant work as actually performed.

The Court finds that the hypothetical presented to the vocational expert does not constitute a reversible error of law in this case. 20 C.F.R. § 404.1560(a) provides that where the Commissioner cannot decide whether a claimant is disabled at one of

the first three steps of the sequential evaluation process, the Commissioner "will consider the claimant's residual functional capacity together with [claimant's] vocational background." Then, the Commissioner compares the residual functional capacity finding with the "physical and mental demands of [claimant's] past relevant work" to determine if the claimant can perform that work. § 404.1560(b). The Commissioner has the authority to elicit the testimony of a vocational expert to assist with this task. *Id.*

It is true that the vocational expert's testimony that "Plaintiff could perform the past work as actually performed but not as generally performed" was based on the hypothetical of an individual dealing with "ordinary levels of supervision." Tr. 96. Yet the ALJ did not rely upon the vocational expert's opinion alone. Considering the vocational expert's opinion, Plaintiff's fifteen year work history and earnings record prior to his dispute with his supervisor, and the absence of evidence that Plaintiff could not function in non-hostile work environments, the ALJ found "no objective evidence to support an inference that, absent the hostile work environment . . . [Plaintiff] would have been unable to adjust to perform this work as he had done successfully for many years." Tr. 41. Moreover, Plaintiff also had the opportunity to examine the vocational expert more completely on this point in order to satisfy his burden of proof, yet Plaintiff failed to do so.

Hence, where the ALJ presented an incomplete hypothetical that the vocational expert answered in the context of assisting the ALJ in his step four

determination of residual functional capacity, in which the burden was on the Plaintiff to establish evidence of a disability, the Court finds there was no error of law.

Plaintiff's Work and Wage History

Plaintiff argues that the ALJ failed to discuss Plaintiff's strong earnings history, which Plaintiff believes should entitle him as a matter of law to "substantial credibility" when claiming an inability to work due to disability. Pla. Mem. of Law at 28.

In the Second Circuit, "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Hughes v. Colvin*, No. 15-CV-181S, 2017 WL 1088259, at *6 (W.D.N.Y. Mar. 23, 2017) (citing *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). This is because a claimant with an established history of employment is unlikely to be "feigning disability." *Patterson v. Chater*, 978 F. Supp. 514, 519 (S.D.N.Y. 1997). Still, a petitioner's work history "is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony." *Montaldo v. Astrue*, No. 10 CIV. 6163 SHS, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012) (quoting *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir.1998)) (internal quotation marks omitted). "While a plaintiff with a good work history is entitled to substantial credibility when claiming they are no longer able to work, . . . [a solid work history] cannot be a substitute for evidence of a medically supported disability." *Johnson v. Astrue*, No.

07-CV-0322C, 2009 WL 3491300, at *7 (W.D.N.Y. Oct. 23, 2009).

In this case, it is clear that the ALJ did not ignore or overlook Plaintiff's work history. As the ALJ noted in his decision, "the claimant's employment and earnings record shows he performed the job [with the Social Security Administration] successfully over many years before the disagreement" with his supervisor that led to his alleged decompensation. Tr. 38. Having considered Plaintiff's work history alongside the other evidence in the record, the Court finds it was not contrary to law for the ALJ to decline to accord Plaintiff's testimony "substantial credibility."

The OPM Records and the Appeals Council

Lastly, Plaintiff observes that 20 C.F.R. § 404.970(b) required the Appeals Council to consider all new and material evidence that relates to the period on or before the date of the ALJ hearing decision, and argues that the Appeals Council's rejection of Plaintiff's evidence of his eligibility for disability retirement through the Office of Personnel Management ("OPM") was an error of law requiring remand.

The Court finds that even if the Appeals Council's rejection was error, it is harmless error that does not require a remand. "[T]he final question of disability is . . . expressly reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133–34 (2d Cir. 1999). Although the Commissioner is required to consider all medical evidence submitted by a claimant, the document from the OPM is not medical evidence. Rather, it makes a conclusory statement of Plaintiff's entitlement to benefits through the OPM, and neither cites nor provides detail or evidence upon

which the statement was based.

Substantial Evidence

Having established that the Commissioner applied the proper legal standards, the Court turns now to Plaintiff's contention that "the evidence of record does not contain substantial evidence to support a finding that [Plaintiff] would not decompensate if he were to return to the workplace." Pl. Mem. of Law at 15. Plaintiff believes that the ALJ's finding that Plaintiff did not satisfy the "Paragraph C" criteria for a mental impairment was not supported by substantial evidence.

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). The Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

To satisfy the "paragraph C" criteria for a mental disorder, the disorder must be "serious and persistent." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00A. A mental disorder is serious and persistent if there is "a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in C1 and C2" listed in 12.00G. *Id.* "The criterion in C1 is satisfied when the evidence shows that [the claimant relies], on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [his] mental disorder." *Id.* at 12.00G(2)(b). The Court finds for purposes of this decision that Plaintiff documented the existence of the disorder for over two years, and his treatment history satisfies the criterion of C1.

However, the Court finds that the ALJ's decision that Plaintiff did not satisfy the criterion of C2 is supported by substantial evidence. Under the regulations:

> The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that . . . you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*Id.* at 12.00(G)(2)(b).

The ALJ made an detailed review of the record prior to reaching his conclusion, noting the following evidence favorable to Plaintiff's claim that he had minimal capacity to adapt to changes in his environment: Plaintiff's Function Report with his initial DIB application (Tr. 30); Plaintiff's 2013 hospital admittance due to depression

and suicide risk (Tr. 31); records of a suicide attempt from Fairfax Hospital in 2014 (Tr. 31); Dr. Wilson's medical opinion based on her treatment of Plaintiff in 2013-14 (Tr. 32); records from Loudon Hospital in 2016 about another self-referral to the emergency room for suicide risk (Tr. 32); Dr. Gwaltney-Hausch's letters (Tr. 34–35); and Plaintiff's own testimony about the emotional toll of his childhood traumas and bullying by his supervisor at the Social Security Administration (Tr. 30).

On the other hand, the ALJ also noted the evidence that did not support Plaintiff's claim. In addition to the proof noted above, the evidence that contradicted Plaintiff's claim that he had minimal capacity to adapt to changes included: Plaintiff's courtship of a new spouse, and a successful move from Virginia to Scio, New York (Tr. 30); the testimony of non-examining medical expert Dr. Richard Anderson, who opined that the evidence of record did not support a diagnosis of bipolar disorder, or any impairment that met or equaled listings 12.04, 12.08 and 12.15 (Tr. 30); Plaintiff's stabilization of GAF scores in 2016 following medical treatment at Loudon Hospital (Tr. 33); the opinion of 2016 consultative examiner Sharla White, who gave plaintiff a good prognosis and opined that he is stabilized on medication (Tr. 35, 1104); and the opinions of state agency psychiatric consultants Leizer, Milan and Sampson from 2016 and 2017, respectively (Tr. 34, 36). The evidence unfavorable to Plaintiff's claim of physical disability included: records from Dr. Sameer Nagda, Dr. George Branche III, and Dr. Christopher Annunziata (Tr. 36), and reviews by state agency medical consultants Dr. Lewis Singer and Dr. Robert McGuffin (Tr. 37).

Despite Plaintiff's contentions, the Court finds that the record in this case contains "relevant evidence that a reasonable mind [would] accept as adequate to support" the ALJ's determination that Plaintiff did not have a severe mental impairment. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings [ECF No. 9] is denied, and Commissioner's motion [ECF No. 17] is granted. The Clerk is ordered to close the case.

So Ordered.

DATED:    February 18, 2019
              Rochester, New York

                                /s/ Charles J. Siragusa
                                CHARLES J. SIRAGUSA
                                United States District Judge